**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DEBORAH L. WEBB, )<br>)<br>                Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE,[1] )<br>COMMISSIONER OF THE SOCIAL )<br>SECURITY ADMINISTRATION, )<br>)<br>                Defendant. ) | Case No. CIV-06-569-HE |

**REPORT AND RECOMMENDATION**

Plaintiff, Ms. Deborah L. Webb, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant Commissioner's final decision denying her application for disability insurance benefits. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record (AR). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

**I.     Procedural Background**

Plaintiff's application for disability benefits was denied initially and upon reconsideration. AR 34-35. Upon Plaintiff's request, an Administrative Law Judge (ALJ)

---

[1] Michael J. Astrue became Commissioner of the Social Security Administration on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is hereby substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

held a hearing on November 7, 2005. AR 400-434.[2] The ALJ issued an unfavorable decision on January 13, 2006. AR 16-30.

The Appeals Council denied Plaintiff's request for review on May 1, 2006, and the decision of the ALJ became the final decision of the Commissioner. AR 5-7.

## II.  The Administrative Decision

The ALJ applied the five-step sequential evaluation process, *see Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005), and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, March 1, 2002. AR 20, 28. At step two, the ALJ determined that Plaintiff has a history of arthritis in her right hip from congenital hip dislocation, that she has had a complete hip replacement, and that she has chronic residual pain secondary to right partial femoral neuropathy, conditions which are severe within the meaning of the Social Security regulations. AR 20, 28. At step three, the ALJ determined that Plaintiff's severe impairments do not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20-21, 29. At step four, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform sedentary work, limited by her ability to stoop, crouch, crawl, balance and kneel only occasionally. The ALJ further limited the range of sedentary work Plaintiff could perform by requiring an option allowing her to sit or stand as needed and by limiting her exposure to

---

[2] The administrative hearing was initially scheduled on August 18, 2005. Plaintiff appeared for the hearing, but the ALJ stated that the hearing would be reset because of technical difficulties beyond her control. AR 395-399.

unprotected heights and/or potentially dangerous and unguarded moving machinery. The ALJ stated that Plaintiff should perform no commercial driving. AR 26-27, 29. Based on the testimony of the VE, the ALJ determined that Plaintiff can perform two sedentary jobs existing in significant numbers in the national economy: telephone quotation clerk and semiconductor die loader. AR 28, 29.[3]

### III.  Plaintiff's Medical History

On September 9, 2003, Dr. James Metcalf examined Plaintiff and reviewed her medical records at the request of the Oklahoma DDD Claims Unit. AR 251-253. Dr. Metcalf stated that Plaintiff has a history of Legg-Perthes disease with chronic dislocation of the right hip. She reportedly had numerous surgical procedures and bracing as a child. After developing necrosis of the right hip joint, Plaintiff underwent total hip replacement surgery on November 7, 2001.[4] After the surgery, Plaintiff developed severe pain and numbness in the right thigh which did not improve with treatment. AR 251.

Plaintiff has made numerous medical contacts attempting to control her pain. In addition to other medical contacts, she received regular medical treatment at the Pain Management Center – OUPB. AR 220-250; 353-365; 374-385. Additionally, one of her

---

[3] In the body of his decision, the ALJ appears to find that Plaintiff could perform her past relevant work as a secretary. AR 27. In the "Findings" section of his decision, however, the ALJ stated that Plaintiff could not perform any of her past relevant work. AR 29. Because of this inconsistency, the ALJ's decision is analyzed as having been decided at the fifth step of the sequential evaluation.

[4] Dr. Metcalf stated that Plaintiff underwent hip surgery on November 7, 2002. AR 251. The medical records indicate, however, that Plaintiff's surgery was a year earlier on November 7, 2001. AR 141.

treating physicians, Dr. Mark Winchester, submitted a Medical Source Statement – Physical in which he described extensive limitations which would preclude Plaintiff from engaging in substantial gainful activity.  AR 386-387.

## IV.   Issues Presented for Judicial Review

Plaintiff presents the following issues for judicial review: (1) whether the ALJ failed to properly apply the "treating physician rule" in his analysis of the medical evidence; (2) whether the ALJ erred in formulating Plaintiff's RFC; and (3) whether the ALJ erred in failing to properly evaluate Plaintiff's credibility.

## V.   Standard of Review

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal.  *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied.  *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Doyal* 331 F.3d at 760 (10th Cir. 2003) (quotation omitted).  A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.  *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004).  The court considers whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but the court does not reweigh the

evidence or substitute its own judgment for the Commissioner's. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

**VI.     Analysis**

    **A.     Claim One – Whether the ALJ Erred in the Analysis of Evidence Provided by Plaintiff's Treating Physicians**

Plaintiff challenges the ALJ's consideration and evaluation of medical records and opinions from her treating physician, Dr. Mark Winchester. Dr. Winchester completed a Medical Source Statement on August 17, 2005. Dr. Winchester stated that Plaintiff was limited to lifting less than ten pounds, that she could stand and/or walk only minutes at a time and no more than one hour in an eight-hour workday, and that Plaintiff can sit no more than four hours in an eight-hour workday. Dr. Winchester further stated that Plaintiff is required to lie down during the normal workday to manage her pain. He noted that Plaintiff is required to take high doses of narcotics daily and that despite all treatment, she still suffers from chronic debilitating hip pain. Dr. Winchester stated that Plaintiff can never climb, balance, stoop, kneel, crouch, crawl or handle, that she can reach only occasionally, but that she can finger and feel frequently. AR 386-387.

Under the "treating physician rule," greater weight is generally given to the opinions of sources of information who have treated the claimant than of those who have not. *See Hackett*, 395 F.3d at 1173-1174 (*citing Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). First, the ALJ must determine whether the opinion of a treating source should be given controlling weight. *Id.* at 1174. Using a sequential analysis, an ALJ is required to give

the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and (2) "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quotation omitted). If an opinion fails to satisfy either of these conditions, it "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Id.* (*quoting* SSR 96-2p, 1996 WL 374188, at *4). Non-controlling opinions "'are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.'" *Id.* Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301 (quotation omitted). If the ALJ chooses to reject the treating physician opinion entirely, the ALJ must set forth specific legitimate reasons for doing so. *See Langley v. Barnhart*, 373 F.3d at 1119. As explained in policy interpretations regarding treating source evidence:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every

6

      reasonable effort" to recontact the source for clarification of the reasons for the opinion.

Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *6-7.

      In this case, the ALJ noted that in one medical record dated August 19, 2003, Dr. Winchester stated that Plaintiff "had been using an RS-4i Stimulator with excellent results in decreasing pain and muscle spasms, as well as improving over-all muscle condition." AR 22. According to the ALJ, this reference to decreased pain, along with Plaintiff's testimony that she could lift ten pounds, AR 424, contradicts Dr. Winchester's Medical Source Statement prepared in August 2005. AR 23. Additionally, the ALJ stated that she did not understand Dr. Winchester's finding that Plaintiff "should never perform any handling." AR 23. Despite her evident confusion, the ALJ made no effort to contact Dr. Winchester and ask for clarification. The ALJ then cited the following list of decisions that are reserved to the Commissioner:

      1.      Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;

      2.      What an individual's RFC is;

      3.      Whether an individual's RFC prevents him or her from doing past relevant work;

      4.      How the vocational factors of age, education, and work experience apply; and

      5.      Whether an individual is "disabled" under the act.

AR 23-24. The ALJ observed that opinions of treating physicians on issues reserved to the Commissioner "are never entitled to controlling weight or special significance." AR 24. The

ALJ stated that Dr. Winchester's conclusions regarding Plaintiff's residual functional capacity "are not well supported and are inconsistent with other substantial medical evidence in the record." *Id.* The ALJ stated that she was "not disposed to attach significant weight to said conclusions." *Id.*

The ALJ correctly identified issues reserved for disposition by the Commissioner. But Dr. Winchester's Medical Source Statement does not include an opinion on any of the issues reserved to the Commissioner. Rather, the statement is evidence that the ALJ should have carefully considered before formulating Plaintiff's RFC. The ALJ states that she would not give controlling weight to Dr. Winchester's Medical Source Statement because of the inconsistencies identified above. The ALJ apparently disregarded Dr. Winchester's opinions regarding Plaintiff's limitations in part because Dr. Winchester opined that Plaintiff could sit for only four hours and could stand for only one hour in an eight-hour workday. The ALJ apparently rejected Dr. Winchester's opinion in this regard because it suggested that Plaintiff "must recline for the remainder of an eight-hour workday." AR 23. The ALJ apparently found Dr. Winchester's statement not believable, but Dr. Winchester did in fact state that Plaintiff would have to lie down during an eight-hour workday to control her pain. Moreover, despite the fact that Plaintiff's pain was somewhat relieved by the use of the RS-4i Stimulator, Dr. Winchester stated that Plaintiff still must take high doses of narcotic pain medication daily. For that reason, he noted that Plaintiff also has environmental restrictions such as avoiding heights and machinery. AR 387.

Having apparently concluded that Dr. Winchester's opinion was not entitled to controlling weight, the ALJ simply concluded that she was "not disposed to attach significant weight" to Dr. Winchester's opinion. AR 24. The ALJ did not, however, explicitly state what weight she was affording Dr. Winchester's opinion. The ALJ stated that the opinion was "not well supported and [was] inconsistent with other substantial medical evidence of record." AR 24. Other than Dr. Winchester's statement regarding the use of the RS-4i Stimulator and Plaintiff's testimony that she could lift ten pounds (with pain), however, the ALJ does not identify the medical records which she thinks are inconsistent with Dr. Winchester's Medical Source Statement. In fact, the medical records, viewed as a whole, support Dr. Winchester's Medical Source Statement. Plaintiff has tried numerous pain modalities, including surgery, physical therapy, the RS-4i Stimulator, and numerous anti-depressants and narcotic pain relievers in an effort to control her pain. On remand, the ALJ should consider and analyze the Dr. Winchester's Medical Source Statement in light of Plaintiff's medical record as a whole and should recontact Dr. Winchester for additional information, if necessary, to resolve the ALJ's confusion as to his opinion that Plaintiff's ability to handle is limited.

**B.     Claim Two – Whether the ALJ Erred in Formulating Plaintiff's RFC**

The ALJ concluded that Plaintiff retains the RFC to perform the exertional requirements of sedentary work with only occasional stooping, kneeling, crouching, crawling, and balancing. The ALJ further found that Plaintiff would require a sit/stand option. AR 25. Having rejected the restrictions reported by Plaintiff's treating physician,

the ALJ apparently relied on the Physical Residual Functional Capacity Assessment completed by a non-examining agency doctor. The familiar checklist form stated that Plaintiff could stand and/or walk for a total of two hours in an eight-hour workday and sit for six hours in an eight-hour workday. The agency doctor found postural limitations precluding Plaintiff from climbing, balancing, stooping, kneeling, crouching, and crawling more than occasionally. AR 311-318.

The Physical Residual Functional Capacity Assessment is some evidence in support of the RFC formulated by the ALJ. Given the ALJ's incomplete assessment of Dr. Winchester's Medical Source Statement, however, the agency RFC does not constitute substantial evidence in support of the ALJ's RFC formulation. On remand, an ALJ must necessarily re-evaluate Plaintiff's RFC after the ALJ contacts Plaintiff's treating physicians, if necessary, and reviews the opinions of Plaintiff's treating physician.

### C.     Claim Three – Whether the ALJ Properly Evaluated Plaintiff's Credibility

The ALJ's assessment of Plaintiff's subjective allegations of pain necessarily required the ALJ to consider Plaintiff's credibility. Plaintiff takes issue with the ALJ's conclusion that Plaintiff's testimony regarding her subjective complaints of pain was not credible.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). Moreover, to be considered disabling, pain must be so severe, either by itself or combined with other impairments, that it precludes any substantial gainful employment. *See Brown v. Bowen*, 801 F.2d 361, 362-

363 (10th Cir. 1986). "A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Rather, "[b]efore the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." *Id.* (citations omitted). The Tenth Circuit Court of Appeals has explained the proper analysis of subjective allegations of pain:

> The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Id.* (quotation omitted). In assessing an individual's credibility regarding symptoms, the administrative law judge should consider factors such as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (*citing Huston v. Bowen*, 838 F.2d 1125 (10th Cir. 1988)). Additionally, credibility findings should be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler*, 68 F.3d at 391. Nevertheless, the Tenth Circuit has "not reduced credibility evaluations to

formulaic expressions: '*Kepler* does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied.'" *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (*quoting Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

In this case, the ALJ found that Plaintiff's statements concerning her impairments are not wholly credible. It appears that the ALJ relied on four isolated medical records documenting a portion of Plaintiff's treatment at the Pain Management Center – OUPB, where she was treated by Dr. Kahn. The ALJ notes that when Dr. Kahn examined Plaintiff on July 9, 2004, he found no muscular atrophy. On April 16, 2004, July 9, 2004, and November 9, 2004, Dr. Kahn reported that Plaintiff was "not putting much effort into the examination of her right leg." Dr. Kahn's September 8, 2004, examination "showed very mild giveaway feeling in her right hip." AR 24-25.[5] The ALJ admitted that "[i]t is not entirely clear what Dr. Kahn [meant] by 'giveaway' feeling[.]"[6] Nevertheless, the ALJ stated that "giveaway weakness can be interpreted as a sign of malingering." *Id*. She further stated that the "reported apparent lack of effort by the claimant suggests possible malingering." AR 26.

---

[5]The medical records submitted by Dr. Kahn are included in the administrative record at 221-229, 353-365 and 374-385.

[6]The ALJ failed to contact Dr. Kahn for an explanation of his medical notes.

Although the ALJ found that Dr. Kahn's statements suggested malingering, the statements could also suggest pain and weakness in Plaintiff's hip.[7] Notably, none of Plaintiff's treating physicians ever indicated that Plaintiff was either malingering or exaggerating her symptoms. In fact, Plaintiff's treating physicians have consistently prescribed narcotic drugs to be taken daily in an attempt to alleviate Plaintiff's pain. *See* AR 274, 276, 361-365. Dr. James P. Metcalf examined Plaintiff at the agency's request and found limited range of motion in all planes of Plaintiff's right hip as well as decreased sensation of the right anterior thigh. AR 251-253. He specifically stated that Plaintiff has no malingering behaviors. AR 253. The limited records upon which the ALJ based her credibility findings do not constitute substantial evidence. In fact, the ALJ's credibility assessment is inconsistent with the medical evidence as a whole. Moreover, the ALJ has failed to closely and affirmatively link substantial evidence to her credibility findings. Accordingly, the Commissioner's decision should be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

---

[7] On June 13, 2005, Dr. Kahn stated, "Again showed some weakness of her right hip flexion and knee extension." AR 365.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objections must be filed with the Clerk of the District Court by May 7th, 2007. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 16th day of April, 2007.

*[signature: Valerie K. Couch]*

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE